**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ISRAEL AGUILAR and ROLANDO TAYUN CHAN, on behalf of themselves and others similarly situated,<br><br>     Plaintiffs,<br><br>  v.<br><br>KIMO MANAGEMENT GROUP CORP. d/b/a SUYO GASTROFUSION and NILSON DIAZ, in his individual and professional capacities,<br><br>     Defendants. | Case No.: 1:21-cv-07537-PGG-BCM |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION OF A COLLECTIVE ACTION AND EQUITABLE TOLLING OF THE STATUTE OF LIMITATIONS

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

PROCEDURAL HISTORY..................................................................................................... 2

RELEVANT FACTS ............................................................................................................... 3

I.      BACKGROUND ........................................................................................................... 3

II.     DEFENDANTS' POLICY AND PRACTICE OF DENYING ALL RESTAURANT
        EMPLOYEES OVERTIME COMPENSATION ............................................................... 4

        A.     Time Cutting ..................................................................................................... 4

ARGUMENT ........................................................................................................................... 7

I.      CONDITIONAL CERTIFICATION IS APPROPRIATE ................................................. 7

        A.     The FLSA's Opt-In Requirement and the Need for Expedited Notice................. 7

        B.     The Two-Step Certification Process for FLSA Collective Actions....................... 9

        C.     Plaintiffs Have Made the Required Showing That They and the Members of
              the FLSA Collective Are Similarly Situated ....................................................... 11

II.     THE COURT SHOULD AUTHORIZE PROMPT NOTICE OF THE INSTANT
        MATTER TO THE FLSA COLLECTIVE...................................................................... 14

        A.     Expedited Notice and Disclosure of Contact Information Is Necessary............... 14

        B.     Plaintiffs' Proposed Notice Is Appropriate in All Respects ................................. 14

III.    THE COURT SHOULD GRANT CONDITIONAL CERTIFICATION DESPITE
        DEFENDANTS' DEFAULT....................................................................................... 17

        A.     Granting Conditional Certification Prior to the Filing of a Responsive
              Pleading Is Permissible and Routine.................................................................... 17

        B.     Assuming Defendants Fail to Cure Their Default, the Court Should Grant
              Conditional Certification, Then Permit Plaintiffs to Seek a Default Judgment
              After the Dissemination of Notice to the Collective............................................. 18

IV.    EQUITABLE TOLLING SHOULD BE GRANTED TO PROTECT THE RIGHTS
        OF THE FLSA COLLECTIVE ................................................................................... 22

CONCLUSION....................................................................................................................... 24

# TABLE OF AUTHORITIES

**Cases**          **Page(s)**

*Bhumithanarn v. 22 Noodle Mkt. Corp.*,
    No. 14-cv-2625 (RJS), 2015 WL 4240985 (S.D.N.Y. July 13, 2015)..............................12, 16

*Bowens v. Atl. Maint. Corp.*,
    546 F. Supp. 2d 55 (E.D.N.Y. 2008) ...................................................................................13

*Cabrera v. Stephens*,
    No. 16-cv-3234 (ADS) (SIL), 2017 WL 4326511 (E.D.N.Y. Sept. 28, 2017)......................16

*Chowdhury v. Duane Reade, Inc.*,
    No. 06-cv-2295 (GEL), 2007 WL 2873929 (E.D.N.Y. Oct. 2. 2007) ...................................12

*Cohen v. Gerson Lehrman Grp., Inc.*,
    686 F. Supp. 2d 317 (S.D.N.Y. 2010)...................................................................................12

*Cunningham v. Elec. Data Sys. Corp.*,
    754 F. Supp. 2d 638 (S.D.N.Y. 2010)........................................................................9, 10, 11

*Damassia v. Duane Reade, Inc.*,
    No. 04 Civ. 8819 (GEL), 2006 WL 2853971 (S.D.N.Y. Oct. 5, 2006)..................................11

*Davis v. Abercrombie & Fitch Co.*,
    No. 08 Civ. 1859 (PKC), 2008 WL 4702840 (S.D.N.Y. Oct. 23, 2008) ...............................16

*Enriquez v. Cherry Hill Mkt. Corp.*,
    No. 10-CV-5616 (FB) (ALC), 2012 WL 440691 (E.D.N.Y. Feb. 10, 2012) .........................15

*Fasanelli v. Heartland Brewery, Inc.*,
    516 F. Supp. 2d 317 (S.D.N.Y. 2007)...................................................................................15

*Fonseca v. Dircksen & Talleyrand Inc.*,
    No. 13 Civ. 5124 (AT), 2014 WL 1487279 (S.D.N.Y. Apr. 11, 2014).........................7, 9, 11

*Foster v. Food Emporium*,
    No. 99 Civ. 3860 CM, 2000 WL 1737858 (S.D.N.Y. Apr. 26, 2000)................................7, 14

*Gaspar v. Personal Touch Moving, Inc.*,
    No. 13-cv-8187 (AJN), 2014 WL 4593944 (S.D.N.Y. Sept. 15, 2014) ...............................16

*Gortat v. Capala Bros., Inc.*,
    No. 07-CV-3629 (ILG), 2010 WL 1423018 (E.D.N.Y. Apr. 9, 2010)....................................8

*Hallissey v. Am. Online, Inc.*,
    No. 99-CIV-3785 (KTD), 2008 WL 465112 (S.D.N.Y. Feb. 19, 2008) ................................12

*Hamadou v. Hess Corp.*,
    915 F. Supp. 2d 651 (S.D.N.Y. 2013) .................................................................................15

*Hoffmann v. Sbarro, Inc.*,
    982 F. Supp. 249 (S.D.N.Y. 1997) ....................................................................................7, 8

*Hoffmann-La Roche, Inc. v. Sperling*,
    493 U.S. 165 (1989) ....................................................................................................8, 15, 16

*Jackson v. N.Y. Tel. Co.*,
    163 F.R.D. 429 (S.D.N.Y. 1995) ......................................................................................10

*Jeong Woo Kim v. 511 E. 5th St., LLC*,
    985 F. Supp. 2d 439 (S.D.N.Y. 2013) .................................................................................8

*Kemper v. Westbury Operating Corp.*,
    No. 12 CV 0895 (ADS)(ETB), 2012 WL 4976122 (E.D.N.Y. Oct. 17, 2012) .....................15

*Khamsiri v. George & Frank's Japanese Noodle Rest., Inc.*
    No. 12 Civ. 265 (PAE), 2012 WL 1981507 (S.D.N.Y. June 1, 2012) .................................13

*Lynch v. United Services Auto. Ass'n*,
    491 F. Supp. 2d 357 (S.D.N.Y. 2007) ....................................................................10, 11, 16

*Martin v. Sprint/united Mgmt. Co.*,
    No. 15 Civ. 5237 (PAE), 2016 WL 30334 (S.D.N.Y. Jan. 4, 2016) .....................................16

*Mendoza v. Ashiya Sushi 5, Inc.*,
    No. 12 Civ. 8629 (KPF), 2013 WL 5211839 (S.D.N.Y. Sept. 16, 2013) .....................7, 9, 10

*Myers v. Hertz Corp.*,
    624 F.3d 537 (2d Cir. 2010) ...............................................................................9, 11, 12, 13

*Pippins v. KPMG LLP*,
    No. 11-cv-0377 (CM) (JLC), 2012 WL 19379 (S.D.N.Y. Jan. 3, 2012) ..............................15

*Qing Tian Zhuo v. Jia Xing 39th Inc.*,
    No. 14-CV-2848 (SHS), 2015 WL 1514950 (S.D.N.Y. Apr. 1, 2015) .................................12

*Ramos v. PJJK Rest. Corp.*,
    No. 15-cv-5672 (PKC), 2016 WL 1106373 (S.D.N.Y. Mar. 10, 2016) ................................14

*Sanchez v. Gansevoort Mgmt. Grp., Inc.*,
    No. 12 Civ. 75 (KBF), 2013 WL 208909 (S.D.N.Y. Jan. 10, 2013) .....................................12

*Schear v. Food Scope Am., Inc.*,
    297 F.R.D. 114 (S.D.N.Y. 2014) .......................................................................................9, 11

*Shajan v. Barolo, Ltd.*,
   No. 10 Civ. 1385 (CM), 2010 WL 2218095 (S.D.N.Y. Jun. 2, 2010) ....................................11

*Spicer v. Pier Sixty LLC*,
   269 F.R.D. 321 (S.D.N.Y. 2010) ........................................................................................9, 10

*Wang v. Empire State Auto Corp.*,
   No. 14 Civ. 1491 (WFK) (VMS), 2015 WL 4603117 (E.D.N.Y. June 29, 2015) .................15

*Whitehorn v. Wolfgang's Steakhouse, Inc.*,
   767 F. Supp. 2d 445 (S.D.N.Y. 2011) .................................................................................15

*Zaldivar v. JMJ Caterers, Inc.*,
   166 F. Supp. 3d 310 (E.D.N.Y. 2016) .................................................................................12

**Statutes**

29 U.S.C. § 216(b) ....................................................................................................................7,

29 U.S.C. § 255(a) ...................................................................................................................16

29 U.S.C. § 626(b) .....................................................................................................................8

**Other Authorities**

Fed. R. Civ. P. 12(a)(1)(A)(i) ....................................................................................................2

Plaintiffs Israel Aguilar ("Aguilar") and Rolando Tayun Chan ("Chan") (together, "Plaintiffs"), by and through their undersigned counsel, Faruqi & Faruqi, LLP, hereby submit this memorandum of law in support of their motion for conditional certification of a collective action under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), equitable tolling of the statute of limitations, Court-facilitated notice to similarly situated persons, and expedited disclosure of contact information.

## PRELIMINARY STATEMENT

Plaintiffs allege that Defendants Kimo Management Group Corp. d/b/a Suyo Gastrofusion ("Suyo" or the "Restaurant") and Nilson Diaz (together, "Defendants") have engaged in a common policy and practice of violating the FLSA by denying Plaintiffs and all similarly situated employees payment for all hours worked and overtime wages. Specifically, at the end of each pay period, Defendants give employees pay slips that drastically reduce their hours worked and, in turn, their compensation (in addition to committing separate violations under the New York Labor Law). This results in Plaintiffs and all other employees who comprise the proposed FLSA Collective being denied payment for all of their hours worked and receiving no overtime compensation whatsoever.

Plaintiffs seek conditional certification of the proposed FLSA Collective and dissemination of notice to the members thereof. In order to conditionally certify a collective action under the FLSA, Plaintiffs need only make a "modest factual showing" that they and the other members of the proposed FLSA Collective were subjected to Defendants' common unlawful policies and practices. Plaintiffs have easily satisfied this requirement.

Indeed, the pleadings, declarations, and documentary evidence submitted herewith clearly demonstrate that Defendants unlawfully denied Plaintiffs and the proposed FLSA Collective payment for all hours worked and overtime wages. Specifically, Aguilar's and Chan's allegations

corroborate each other's claims and are further supported by their respective sworn declarations, which confirm that they and all others similarly situated were subjected to Defendants' common and unlawful wage practices.   Further, Plaintiffs submit documentary evidence proving that Defendants pay employees for far fewer hours than they record on Defendants' timekeeping system, thereby further buttressing their collective action allegations.

While Defendants have not appeared in this action and are currently in default, this should have no impact on the Court's analysis.   In fact, should Defendants fail to cure their default, it is imperative that Plaintiffs be granted conditional certification prior to seeking a default judgment. As outlined below, this is the only way to ensure that the rights of all members of the proposed FLSA collective (as opposed to just Plaintiffs' rights) are vindicated.

Accordingly, in fulfillment of the broad remedial purposes of the FLSA, the Court should grant conditional certification as soon as possible to provide members of the proposed FLSA Collective an opportunity to stop the daily expiration of their claims and ability to recover damages for wages they were unlawfully denied.

## PROCEDURAL HISTORY

Plaintiffs commenced this action on September 9, 2021, alleging claims for violations of the FLSA on behalf of all similarly situated persons employed by Defendants within the full statute of limitations period.   *See* Declaration of Innessa M. Huot ("Huot Decl."), Exhibit 1 ("Complaint").[1]   Plaintiffs effected service upon Defendants on September 20, 2021.   *See* ECF Nos. 11 to 12.   Accordingly, Defendants' deadline to Answer or otherwise respond to the Complaint was October 12, 2021.   *Id*.; Fed. R. Civ. P. 12(a)(1)(A)(i) (responsive pleading due "within 21 days after being served with the summons and complaint").   Defendants did not respond

---

[1] Unless otherwise noted, all exhibits to the Huot Decl. are hereinafter cited as "Ex. __."

to the Complaint by their deadline.  Huot Decl. ¶ 8.  Accordingly, on October 20, 2021, Plaintiffs requested that the Clerk of the Court issue a Certificate of Default against Defendants (*see* ECF Nos. 13 to 15), which the Clerk of the Court issued the same day.  *See* ECF Nos. 16 to 17.  Plaintiffs effected service of the Certificates of Default upon Defendants on November 3, 2021.  ECF Nos. 18 to 19.  To date, Defendants have not responded to the Complaint or appeared in this action. Huot Decl. ¶ 11.

## RELEVANT FACTS

### I.   BACKGROUND

Defendants own and operate the Restaurant, a Latin-Asian fusion eatery and lounge in the Bronx, New York.  Complaint ¶¶ 1, 31.  Diaz is the manager of the Restaurant.  *Id.* ¶ 26.  Plaintiffs seek conditional certification of a collective of all employees who worked at the Restaurant under various job titles, including, *inter alia*: (i) Chef; (ii) Dishwasher; (iii) Server; (iv) Busser; and (v) Bartender (together, "Restaurant Employees").  *Id.* ¶ 33.  Defendants subject all Restaurant Employees to the same employment and compensation policies, and exert the same control over all Restaurant Employees.  *Id.* ¶¶ 31-38, 42.  In addition to hiring them and controlling their compensation, Defendants direct Restaurant Employees regarding how to perform their job duties, set their schedules, and discipline them for poor performance.  *Id.* ¶¶ 22-25, 27-33.

Defendants require Restaurant Employees to perform assigned duties, including, *inter alia*: (i) preparing food and drinks; (ii) cooking food; (iii) serving food and drinks to customers; (iv) cleaning the Restaurant's dining area, kitchen, and bathrooms; (v) purchasing supplies for the Restaurant; and (vi) restocking the Restaurant with supplies.  *Id.* ¶¶ 52, 78. Defendants schedule Restaurant Employees to work shifts that last anywhere from 10 to 15 hours per day.  *Id.* ¶¶ 55, 66, 69-71, 79-82, 90-96, 99-101; *see also* Declaration of Israel Aguilar ("Aguilar Decl.") ¶ 3

(typical shifts were 10 to 11 hours and 13 hours on Sundays); Declaration of Rolando Tayun Chan ("Chan Decl.") ¶ 3 (10 to 15 hours).

Restaurant Employees typically work 40 to 75 hours per week.  Complaint ¶¶ 6, 43, 53-55, 66, 70, 79-82, 90-96, 100, 110-11; *see also* Aguilar Decl. ¶ 3 (worked an average of 53 to 66 hours per week); Chan Decl. ¶ 3 (60 to 75 hours).  Defendants do not provide Restaurant Employees with paystubs, wage notices, or other records that accurately reflect the number of hours they work.  Complaint ¶¶ 9, 34-38, 48-50, 72-73, 75-76, 101-03, 105-06; *see also* Aguilar Decl. ¶¶ 4-5, 7, 12 (always paid in cash and never received accurate paystubs or other records); Chan Decl. ¶¶ 4-5, 7, 21 (always paid in cash and received pay slips that never accurately reflected the number of hours he worked, but no other records).  Instead, Defendants give Restaurant Employees inaccurate pay slips that significantly reduce the actual number of hours Restaurant Employees worked during the preceding one-week pay period.  Complaint ¶¶ 4, 34-38, 62-66, 75, 86-96, 105.

## II.   DEFENDANTS' POLICY AND PRACTICE OF DENYING ALL RESTAURANT EMPLOYEES OVERTIME COMPENSATION

### A.   Time Cutting

Defendants utilize a timekeeping system that logs each Restaurant Employee's clock-in and clock-out times.  *Id.* ¶ 34; Aguilar Decl. ¶ 6; Chan Decl. ¶ 6.  At the end of each pay period—which spans from Monday through Sunday—Defendants give Restaurant Employees pay slips for the preceding pay period that reflect significantly deflated hours worked.  Complaint ¶¶ 35-38; Aguilar Decl. ¶ 7 ("Defendants gave me a pay slip for the previous week that never showed the total number of hours I worked, or the hours I logged in Defendants' timekeeping system."); Chan Decl. ¶ 7 (same).  Indeed, Defendants engage in a common pattern and practice of deliberately reducing Restaurant Employees' hours worked via inaccurate pay slips.  *See id.*; *see also* Exhibit A attached to the Aguilar Decl. (sampling of Aguilar's inaccurate pay slips); Exhibits A and B

attached to the Chan Decl. (sampling of Chan's inaccurate pay slips).  As a result, Defendants never pay Restaurant Employees overtime compensation for hours worked in excess of 40 in a workweek.  Complaint ¶¶ 7, 39-40, 44-45, 68, 70, 98, 100, 156-63; Aguilar Decl. ¶¶ 8, 11; Chan Decl. ¶¶ 8, 15.

By way of example, from March 8, 2021 through March 14, 2021, Aguilar worked 55 hours (as opposed to 25 hours reflected in his pay slip) and received $437.50 in cash for all 55 hours worked—amounting to $7.95 per hour—and was not paid overtime.  *Id.* ¶¶ 62-67; *see* Aguilar Decl. ¶¶ 9-10; Aguilar Decl. Ex. A.  Like Aguilar and all other Restaurant Employees, Chan was also never paid overtime wages for hours worked in excess of 40 in a workweek.  *Id.* ¶ 11 ("I was never paid time-and-a-half for hours worked over 40 in a workweek."); Chan Decl. ¶ 15 ("Defendants never paid me any overtime.").

By way of further example, from May 17, 2021 through May 23, 2021, Chan worked 67.45 hours and received $757.50 in cash for all 67.45 hours worked—amounting to $11.23 per hour—and zero overtime wages.  *Id.* ¶¶ 86-97; Chan Decl. ¶ 10.  Similarly, from June 7, 2021 through June 13, 2021, Chan worked a total of 64.60 hours and Defendants paid him $734.33 in cash for all 64.60 hours worked—amounting to $11.36 per hour.  *Id.* ¶ 14.  Chan never received overtime compensation.  *Id.*  Indeed, Aguilar and Chan typically worked far more than 40 hours in a week and were never paid overtime wages.  Aguilar Decl. ¶ 11 ("I usually worked more than 40 hours in a week" and never received overtime pay); Chan Decl. ¶ 15 ("I usually worked a lot more than 40 hours in a week and Defendants never paid me any overtime.").

Photographs Chan took of Defendants' timekeeping machine each time he clocked in and out during the two pay periods in question prove that Defendants did, in fact, significantly reduce his hours worked when creating his pay slips.  Complaint ¶ 86-99; Chan Decl. ¶¶ 9-11, 13-14, 16;

*compare* Chan Decl. Ex. B *with* Chan Decl. Ex. C; *compare also* Chan Decl. Ex. D *with* Chan Decl. Ex. E.  Indeed, Chan worked a total of 67.45 hours from May 17, 2021 through May 23, 2021, as opposed to the 47 hours reflected on his pay slip.  Chan Decl. ¶¶ 10-11.  As a result, Defendants failed to pay Chan an additional $42.50 in straight time wages and $823.50 in overtime wages, for a total of $866.00 in unpaid wages.  Complaint ¶ 98.  Further, Chan worked a total of 64.60 hours from June 7, 2021 through June 13, 2021, as opposed to the 45.97 hours reflected in his pay slip.[2]  Chan Decl. ¶¶ 13-14, 16.  As a result, Defendants denied Chan an additional $65.67 in straight time wages[3] and $738.00 in overtime wages,[4] for a total of $803.67 in unpaid wages.

Plaintiffs, like all other Restaurant Employees, were victims of Defendants' common and unlawful policy and practice of denying them overtime compensation for hours worked over 40 in a week.  Plaintiffs had conversations with other Restaurant Employees who indicated that they were paid (and underpaid) in a similar manner to Plaintiffs.  *See* Complaint ¶¶ 74-76, 104-06; Aguilar Decl. ¶ 12 ("Based on my conversations with other Chefs, Dishwashers, Servers, Bussers, and Bartenders who worked for Defendants, I understand that they too were always paid in cash, received incorrect pay slips, were never paid for all of their hours worked, and were never paid overtime."); Chan Decl. ¶ 21 (same).

---

[2] Unfortunately, Chan was unable to capture a photograph of the times he clocked in and out after his shift on June 12, 2021 and before his shift on June 13, 2021; however, on June 12, 2021, he clocked in at approximately 2 p.m. and clocked out at approximately 12:30 a.m. and clocked in at approximately 11:00 a.m. on June 13, 2021.  Chan Decl. ¶¶ 18-20.

[3] 40 hours x $20.00 (regular rate) = $800.00; $800.00 - $734.44 = $65.56.

[4] 24.60 hours x $30.00 (overtime rate) = $738.00.

## ARGUMENT

### I.   CONDITIONAL CERTIFICATION IS APPROPRIATE

#### A.   The FLSA's Opt-In Requirement and the Need for Expedited Notice

The FLSA states in relevant part that:

> An action . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in [sic] behalf of himself or themselves and other employees similarly situated.  No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b) ("Section 216(b)").

That is, in a collective action under Section 216(b), unlike in a class action under Federal Rule of Civil Procedure 23 ("Rule 23"), an employee is not a member of the collective until the employee affirmatively opts-in to the collective action.  *Fonseca v. Dircksen & Talleyrand Inc.*, No. 13 Civ. 5124(AT), 2014 WL 1487279, at *1 (S.D.N.Y. Apr. 11, 2014) ("Thus, putative class members must 'opt-in' to participate in an FLSA collective action."); *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 260 (S.D.N.Y. 1997) ("Thus, under the FLSA, potential plaintiffs must 'opt-in' to a collective action to be bound by the judgment (and to benefit from it).");  *Mendoza v. Ashiya Sushi 5, Inc.*, No. 12 Civ. 8629 (KPF), 2013 WL 5211839, at *2 (S.D.N.Y. Sept. 16, 2013) (same). Thus, until Restaurant Employees are given notice and are permitted to file consent forms to opt-in, the statute of limitations continues to run against them on a daily basis.  *Hoffmann*, 982 F. Supp. at 260 ("[O]nly by 'opting in' will the statute of limitations on potential plaintiffs' claims be tolled.");  *Mendoza*, 2013 WL 5211839, at *2 (same).

Therefore, it is critical that similarly situated employees be afforded notice as soon as possible and be provided with the opportunity to opt-in, as their claims may be reduced or extinguished daily.  *Foster v. Food Emporium*, No. 99 CIV 3860 (CM), 2000 WL 1737858, at *2

n.1 (S.D.N.Y. Apr. 26, 2000) ("Because of the statute of limitations, potential plaintiffs may be eliminated as each day goes by.  For this reason, it is advisable that notice be given as soon as practicable."); *Hoffmann*, 982 F. Supp. at 262 ("[C]ourts have endorsed the sending of notice early in the proceeding, as a means of facilitating the FLSA's broad remedial purpose and promoting efficient case management."); *Jeong Woo Kim v. 511 E. 5th St., LLC*, 985 F. Supp. 2d 439, 451 (S.D.N.Y. 2013) ("Here, court-facilitated notice is appropriate 'to prevent erosion of claims due to the running statute of limitations, as well as to promote judicial economy.'") (quoting *Khamsiri v. George & Frank's Japanese Noodle Rest. Inc.*, No. 12 Civ. 265 (PAE), 2012 WL 1981507, at *1 (S.D.N.Y. June 1, 2012)); *Gortat v. Capala Bros., Inc.*, No. 07-CV-3629 (ILG), 2010 WL 1423018, at *9 (E.D.N.Y. Apr. 9, 2010) ("Because the statute of limitations for FLSA claims continues to run for each individual plaintiff until he or she opts in, early certification and notice are favored in order to protect plaintiffs' rights.") (citation omitted).

The United States Supreme Court has affirmed the importance of potential opt-in plaintiffs receiving timely notice of their potential claims.  *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).  This seminal case sets forth the requirements for bringing a collective action.[5]  The Court observed that a collective action authorized by Section 216(b) "allows . . . plaintiffs the advantage of lower individual costs to vindicate [their] rights by the pooling of resources."  *Hoffmann-La Roche*, 493 U.S. at 170.  The Court went on to point out that, "[t]hese benefits, however, depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate."  *Id.*

_____

[5] While the Supreme Court's decision in *Hoffmann-La Roche* involved a collective action under the Age Discrimination in Employment Act ("ADEA"), the analysis applies to FLSA collective actions with equal force because the ADEA adopted the collective action enforcement provisions of the FLSA.  *See* 29 U.S.C. § 626(b); *Hoffmann*, 982 F. Supp. at 261 n.15.

**B.**       **The Two-Step Certification Process for FLSA Collective Actions**

The Second Circuit has approved a two-step process for district courts to utilize in determining whether litigants should be permitted to proceed collectively under Section 216(b). *See, e.g.*, *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010) (describing the two-step process in detail); *Fonseca*, 2014 WL 1487279, at *1-2 (same); *Schear v. Food Scope Am., Inc.*, 297 F.R.D. 114, 121 (S.D.N.Y. 2014) (same).

First, at an early stage in litigation, the court must make an initial determination limited strictly to whether the named plaintiffs are "similarly situated" to the potential members of the FLSA collective.  *Myers*, 624 F.3d at 555; *see also Cunningham v. Elec. Data Sys. Corp.*, 754 F. Supp. 2d 638, 644 (S.D.N.Y. 2010) (citing *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007)).  To do so, the named plaintiffs need only make a very "modest factual showing" that they and potential opt-in plaintiffs "together were victims of a common policy or plan that violated the law," after which the court should facilitate notice of the action to the potential members of the collective.  *Myers*, 624 F.3d at 555 (internal quotations marks omitted); *Fonseca*, 2014 WL 1487279, at *1 ("At the first stage, plaintiffs must make a modest factual showing that they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law.") (internal quotation marks omitted); *Schear*, 297 F.R.D. at 121 (same).  For this reason, the initial phase is called the "notice stage."[6]  *Myers*, 624 F.3d at 555 (citing *Hoffmann*, 982 F. Supp. at 261); *see also Spicer v. Pier Sixty LLC*, 269 F.R.D. 321, 336 (S.D.N.Y. 2010).

---

[6] The "notice stage" is often referred to as "conditional certification," borrowing the term from Rule 23. This term is somewhat of a misnomer in FLSA actions as, unlike Rule 23, Section 216(b) does not have any "certification" provision, and FLSA plaintiffs are not required to establish any of the Rule 23 categories to proceed collectively.  *Mendoza*, 2013 WL 5211839, at *2 ("FLSA collective actions, unlike class actions brought under Rule 23, need not satisfy the standards of numerosity, typicality, commonality, or representativeness.").  That said, Plaintiffs here can easily meet even the most stringent standards for certification under Section 216(b) or Rule 23.

"The burden for demonstrating that potential plaintiffs are 'similarly situated' is very low at the notice stage." *Lynch*, 491 F. Supp. 2d at 368; *see also Mendoza*, 2013 WL 5211839, at *3 ("Courts may approve sending notice if plaintiffs make a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law' . . . The modest factual showing can be made by rel[ief] on plaintiffs' own pleadings[.]") (quoting *Hoffmann*, 982 F. Supp. at 261) (quoting *Myers*, 624 F.3d at 555) (internal quotation marks omitted) (alterations omitted); *Cunningham*, 754 F. Supp. 2d at 644 ("At this first step, the court uses a 'relatively lenient evidentiary standard to determine whether a collective action is appropriate.'") (quoting *Mentor v. Imperial Parking Sys., Inc.*, 246 F.R.D. 178, 181 (S.D.N.Y. 2007)).  Plaintiffs merely need to provide "some factual basis from which the court can determine if similarly situated potential plaintiffs exist." *Jackson v. N.Y. Tel. Co.*, 163 F.R.D. 429, 431 (S.D.N.Y. 1995) (internal quotation marks omitted).  "The leniency of this requirement is consistent with the broad remedial purpose of the FLSA." *Spicer*, 269 F.R.D. at 336 (citing *Morales v. Plantworks, Inc.*, No. 05 Civ. 2349(DC), 2006 WL 278154, at *2 (S.D.N.Y. Feb. 2, 2006)).

If Plaintiffs satisfy their burden of showing that similarly situated employees exist, the Court should conditionally certify the collective and order that appropriate notice be given to the members of the putative FLSA Collective to afford them the opportunity to opt-in to the action. *Cunningham*, 754 F. Supp. 2d at 644; *see also Lynch*, 491 F. Supp. 2d at 368 ("Once notice is accomplished, the action proceeds as a collective action throughout the discovery process.") (citing *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 197 (S.D.N.Y. 2006)).

Second, typically after a substantial period of discovery has been completed, the defendants may move for "decertification," where the district court will be asked to conduct a somewhat more

stringent analysis of whether the plaintiffs who have opted-in to the FLSA Collective are in fact "similarly situated" to the named Plaintiffs. *Myers*, 624 F.3d at 555; *Fonseca*, 2014 WL 1487279, at *2 ("At the second stage, the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs."); *Schear*, 297 F.R.D. at 121 (same). The action may be "decertified" if the record reveals that the named Plaintiffs and the FLSA Collective are not similarly situated, and the opt-in plaintiffs' claims may be dismissed without prejudice. *Id.* This second step "utilizes a more stringent factual determination . . . because the court is able to examine whether the *actual* plaintiffs brought into the case are similarly situated." *Cunningham*, 754 F. Supp. 2d at 644 (citation omitted) (internal quotation marks omitted).

The underlying merits of Plaintiff's claims should not be litigated at this initial notice stage, but rather at summary judgment and/or trial. *See, e.g.*, *Fonseca*, 2014 WL 1487279, at *3 ("[M]erits based arguments are premature on a motion for conditional certification and must wait for summary judgment and/or trial."); *Shajan v. Barolo, Ltd.*, No. 10 Civ. 1385(CM), 2010 WL 2218095, at *1 (S.D.N.Y. June 2, 2010) ("Weighing of the merits [when deciding conditional certification] is absolutely inappropriate."); *Lynch*, 491 F. Supp. 2d at 368-69 (S.D.N.Y. 2007) ("At this procedural stage, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations"); *Damassia v. Duane Reade, Inc.*, No. 04 Civ. 8819(GEL), 2006 WL 2853971, at *5 (S.D.N.Y. Oct. 5, 2006) ("[A]ttacks on plaintiffs' affidavits and other evidence" are premature at the notice stage).

C. **Plaintiffs Have Made the Required Showing That They and the Members of the FLSA Collective Are Similarly Situated**

As stated above, to meet the minimum burden required for conditional certification, Plaintiffs must make only a "modest factual showing" that they and the members of the putative

FLSA Collective "together were victims of a common policy or plan that violated the law." *See Myers*, 624 F.3d at 555 (quoting *Hoffmann*, 982 F. Supp. at 261).  This burden may be "satisfied with 'substantial allegations' of a factual nexus between named plaintiffs and potential opt-in plaintiffs with regard to their employer's alleged FLSA violation." *Cohen v. Gerson Lehrman Grp., Inc.*, 686 F. Supp. 2d 317, 326 (S.D.N.Y. 2010); *see also Hallissey v. Am. Online, Inc.*, No. 99-CIV-3785 (KTD), 2008 WL 465112, at *1 (S.D.N.Y. Feb. 19, 2008) ("Plaintiffs may satisfy this requirement by relying on their own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members."); *Qing Tian Zhuo v. Jia Xing 39th Inc.*, No. 14-Cv-2848 (SHS), 2015 WL 1514950, at *3 (S.D.N.Y. Apr. 1, 2015) (finding declarations of a single plaintiff sufficient to conditionally certify a collective of four restaurants).  Thus, the proper inquiry is whether Plaintiffs, the opt-in plaintiffs, and the other members of the putative FLSA Collective are similarly situated with respect to the allegations in the Complaint.  *See Chowdhury v. Duane Reade, Inc.*, No. 06 Civ 2295(GEL), 2007 WL 2873929, at *5 (S.D.N.Y. Oct. 2. 2007).

Issuance of notice is frequently based largely on employee declarations, and very often when there is only a single declaration.  *See, e.g., Zaldivar v. JMJ Caterers, Inc.*, 166 F. Supp. 3d 310, 318 (E.D.N.Y. 2016) ("[C]ourts have routinely found that the allegations in the pleadings and the 'personal observations of one plaintiff's affidavit' are 'sufficient to make the modest factual showing necessary to conditionally certify [a] class.'") (quoting *Hernandez v. NGM Mgmt. Grp. LLC*, No. 12-CV-7795(RWS), 2013 WL 5303766, at *3 (S.D.N.Y. Sept. 20, 2013)); *Bhumithanarn v. 22 Noodle Mkt. Corp.*, No. 14-cv-2625 (RJS), 2015 WL 4240985, at *3-4 (S.D.N.Y. July 13, 2015) (conditional certification based on one plaintiff's declaration); *Sanchez v. Gansevoort Mgmt. Grp., Inc.*, No. 12 Civ. 75 (KBF), 2013 WL 208909, at *1 (S.D.N.Y. Jan. 10, 2013) (single

declaration); *Khamsiri*, 2012 WL 1981507, at *1 (single declaration); *Bowens v. Atl. Maint. Corp.*, 546 F. Supp. 2d 55, 82 (E.D.N.Y. 2008) (no corroborating evidence besides plaintiff's declaration).

Here, Plaintiffs have made a substantial showing that they and all other Restaurant Employees were and are subject to the same common policy that violates the FLSA. Indeed, Plaintiffs have provided sworn allegations in their Complaint (*see* Ex. 1), as well as sworn testimony in their declarations, which demonstrate that Defendants' policy and practice is both common and unlawful under the FLSA. *See* Aguilar Decl.; Chan Decl. Additionally, Plaintiffs also provide sworn testimony of their conversations with co-workers showing that other Restaurant Employees are also paid in a similar manner as they are—and are likewise denied overtime wages. *See* Aguilar Decl. ¶ 12; Chan Decl. ¶ 21. Finally, the instant motion is supported by documentary evidence in the form of Defendants' pay slips and photographs Chan took of Defendants' timekeeping machine at the times he clocked in and out over the course of a pay period, which together show Defendants' common policy and practice of cutting Restaurant Employees' hours worked. *See supra* at 5-6; *see also* Aguilar Decl. Ex. A; Chan Decl. Exs. A-E.

These sworn allegations, testimony, and documentary evidence confirm that Plaintiffs and the members of the putative FLSA Collective were all victims of the same unlawful policy. *See id.* Put simply, Plaintiffs have made far more than the requisite "modest factual showing" that they and the members of the putative FLSA Collective "together were victims of a common policy or plan that violated the law." *Myers*, 624 F.3d at 555 (internal quotation marks omitted). Therefore, the Court should grant conditional certification.

## II.   THE COURT SHOULD AUTHORIZE PROMPT NOTICE OF THE INSTANT MATTER TO THE FLSA COLLECTIVE

### A.   Expedited Notice and Disclosure of Contact Information Is Necessary

Plaintiffs respectfully request expedited disclosure of contact information to send notice of this action to all potential opt-in plaintiffs as expeditiously as possible.  As previously noted, until the absent members of the putative FLSA Collective opt into this action, the statute of limitations is running against them on a daily basis. *See supra* at 6-7.  Accordingly, the timing of the notice is of great significance.  *See Foster*, 2000 WL 1737858, at *2 n.1 ("[B]ecause of the statute of limitations, potential plaintiffs may be eliminated as each day goes by.  For this reason, it is advisable that notice be given as soon as practicable."); *Ramos v. PJJK Rest. Corp.*, No. 15-cv-5672 (PKC), 2016 WL 1106373, at *2 (S.D.N.Y. Mar. 10, 2016) ("Courts need not wait for defendants to begin or complete discovery before approving a conditional collective action; rather courts have endorsed the sending of notice early in the proceeding, as a means of facilitating the FLSA's broad remedial purpose and promoting efficient case management") (internal quotation marks omitted).  Here, it is imperative that Restaurant Employees of the putative FLSA Collective receive prompt notice, as many of them have been employed by Defendants for over three years or are no longer working for Defendants.  Thus, those Restaurant Employees risk having their claims extinguish if they do not receive notice and join this proceeding.

### B.   Plaintiffs' Proposed Notice Is Appropriate in All Respects

Plaintiffs propose that the Court authorize the distribution of a Notice of Pendency and Consent Form in English and Spanish advising all potential opt-in plaintiffs of their right to join this collective action.  Specifically, Plaintiffs request that Notices of Pendency and Consent to Join Forms be disseminated to the putative FLSA Collective via certified mail and email.  *See* Ex. 2 (Proposed Notice of Pendency and Consent to Join Form to be sent via certified mail and as an

attachment to the email notice (Ex. 3)); s*ee* Ex. 3 (Proposed Notice of Pendency to be sent via email).   Further, Plaintiffs request that Notices of Pendency and Consent to Join forms be disseminated via text message and posted prominently in the Restaurant.   *See* Ex. 4 (Proposed Notice of Pendency to be sent via text message); Ex. 5 (Proposed Notice of Pendency to be posted in the Restaurant).   This is to ensure and provide the greatest likelihood that the members of the putative FLSA Collective receive notice of this action.

Plaintiffs' proposed notices are "timely, accurate, and informative," and therefore should be approved.  *Hoffmann-La Roche*, 493 U.S. at 172.  Courts in this Circuit have approved similar notice by mail and email.  *See, e.g., Pippins v. KPMG LLP*, No. 11-cv-0377(CM)(JLC), 2012 WL 19379, at *14 (S.D.N.Y. Jan. 3, 2012) (ordering notice sent by email and finding that "given the reality of communications today . . . the provision of email addresses and email notice in addition to notice by first class mail is entirely appropriate."); *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 324 (S.D.N.Y. 2007) (ordering production of email addresses).  Courts in this Circuit have further approved similar notice by workplace posting.  *See, e.g., Fa Ting Wang v. Empire State Auto Corp.*, No. 14-cv-1491 (WFK) (VMS), 2015 WL 4603117, at *17 (E.D.N.Y. July 29, 2015) (recommending that the defendants be ordered to post notice in a reasonable location at defendants' worksites); *Enriquez v. Cherry Hill Mkt. Corp.*, No. 10-CV-5616 (FB)(ALC), 2012 WL 440691, at *5 (E.D.N.Y. Feb. 10, 2012) ("Posting the notice is a reasonable means of assuaging the vagaries of notice by mail, and would not unduly burden the defendants."); *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 669 (S.D.N.Y. 2013) (approving request to post workplace notice); *Kemper v. Westbury Operating Corp.*, No. CV 12 0895(ADS)(ETB), 2012 WL 4976122, at *7 (E.D.N.Y. Oct. 17, 2012) (approving request to post at defendants' business locations); *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 449 (S.D.N.Y. 2011)

("Courts routinely approve requests to post notice on employee bulletin boards and in other common areas, even where potential members will also be notified by mail.").

Additionally, courts in this Circuit have approved similar notices by text message. *See, e.g.*, *Cabrera v. Stephens*, No. 16-CV-3234 (ADS) (SIL), 2017 WL 4326511, at *8 (E.D.N.Y. Sept. 28, 2017) ("Practical requests such as [text messaging] . . . further the purpose of notice of a collective action under the FLSA."); *Martin v. Sprint/United Mgmt. Co.*, No. 15 Civ. 5237 (PAE), 2016 WL 30334, at *19 (S.D.N.Y. Jan. 4, 2016) (authorizing dissemination of notice by text message); *Bhumithanarn*, 2015 WL 4240985, at *5 ("[G]iven the high turnover characteristic of the [defendants'] industry, the Court finds that notice via text message is likely to be a viable and efficient means of communicating with many prospective members of this collective action.").

To provide the members of the putative FLSA Collective with notice of this action, Plaintiffs require the names and contact information for those individuals. *See Hoffmann-La Roche*, 493 U.S. at 170 ("The District Court was correct to permit discovery of the names and addresses of the discharged employees."); *Lynch*, 491 F. Supp. 2d at 371 (explaining that "identification [of similarly situated employees] is necessary so that [plaintiff] can provide them with notice of this action"). Thus, Plaintiffs respectfully request that Defendants be ordered to provide the names, last known addresses, telephone numbers (home and mobile), email addresses, and dates of employment of all Restaurant Employees employed by Defendants, for a period of three years prior to the filing of the Complaint, in a computer-readable list.

A three-year time frame is appropriate given that the FLSA expressly permits a three-year statute of limitations to remedy willful violations of thereof. 29 U.S.C. § 255(a); *see also Gaspar v. Personal Touch Moving, Inc.*, No. 13-cv-8187 (AJN), 2014 WL 4593944, at *6 (S.D.N.Y. Sept. 15, 2014) (finding a three-year notice period appropriate); *Davis v. Abercrombie & Fitch Co.*, No.

08 Civ. 1859(PKC), 2008 WL 4702840, at *12 (S.D.N.Y. Oct. 23, 2008) ("Courts that have faced this issue routinely approve a three-year notice period."). In short, there is no downside to providing notice to the Restaurant Employees—the crux of conditional certification—but there is serious prejudice in delaying the same.

## III. THE COURT SHOULD GRANT CONDITIONAL CERTIFICATION DESPITE DEFENDANTS' DEFAULT

### A. Granting Conditional Certification Prior to the Filing of a Responsive Pleading Is Permissible and Routine

The fact that Defendants have not yet filed an Answer or otherwise responded to the Complaint in no way cuts against conditionally certifying the proposed FLSA collective or has any bearing on the Court's analysis. There is plenty of support for the proposition that motions for conditional certification can be decided prior to the filing of an Answer or motion to dismiss. *See, e.g.*, *Ji Li v. Ichiro Rest. Inc.*, No. 14 Civ. 10242(AJN)(JCF), 2015 WL 6828056, at *1, *7 (S.D.N.Y. Nov. 5, 2015) (granting motion for conditional certification while motion to dismiss was still pending); *Yahraes v. Rest. Assocs. Events Corp.*, No. 10-CV-935 (SLT), 2011 WL 844963, at *1-2 n.4 (E.D.N.Y. Mar. 8, 2011) (considering motion for conditional certification after defendants filed pre-motion conference letter concerning anticipated motion to dismiss).

Although out-of-Circuit, the court in *Guy v. Casal Institute of Nevada, LLC*, No. 2:13-CV-02263-APG, 2014 WL 1899006, at *6 (D. Nev. May 12, 2014) explained its rationale for authorizing notice before deciding a pending motion to dismiss, which is highly instructive here:

> The Court [ ] finds no basis to defer authorizing the sending of notice until the Court rules on Defendants' pending motion to dismiss . . . [ ] **if the Court deferred the sending of notice, the statute of limitations would continue to run and the claims of some potential opt-in plaintiffs would likely become time barred, in whole or in part, before they had the opportunity to opt-in.** Finally, the primary burden and expense of sending notice falls on the named Plaintiff and her counsel. **The relatively minor burden and inconvenience**

> *that Defendant will avoid if this action is later dismissed, does not*
> *outweigh the interest in moving this action forward*.

*Id.* (emphasis added).

In short, there is no downside to providing notice to employees—the crux of conditional certification—but there is serious prejudice to delay.

**B.**   **Assuming Defendants Fail to Cure Their Default, the Court Should Grant Conditional Certification, Then Permit Plaintiffs to Seek a Default Judgment After the Dissemination of Notice to the Collective**

The Court's analysis is similarly unaffected by the fact that Defendants have not yet noticed an appearance in this action and are currently in default.  *See supra* at 2-3.  While perhaps an unusual set of circumstances, granting conditional certification against a defendant in default is in no way unprecedented.  Moreover, given that Plaintiffs have easily satisfied the "modest factual showing" that they and the members of the putative FLSA Collective "together were victims of a common policy or plan that violated the law" (*Myers*, 624 F.3d at 555 (internal quotation marks omitted)), granting conditional certification while Plaintiffs pursue a default judgment is the correct course of action.

Indeed, it is proper to grant conditional certification while the defendants are in default. *See Hosking v. New World Mortg., Inc.*, No. 07-CV-2200 (MKB), 2013 WL 5132983, at *2 (E.D.N.Y. Sept. 12, 2013) (granting conditional certification after granting default judgment against defendants); *Cortes v. Astoria N.Y. Holdings LLC*, No. 11-CV-3062 (SJ), 2011 WL 5964598, at *1, *3 (E.D.N.Y. Oct. 24, 2011) (granting conditional certification despite failure to oppose same and defendants' default); *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 129 (E.D.N.Y. 2011) ("[I]t is proper to grant default judgment in favor of named Plaintiffs while simultaneously granting a motion for conditional class certification under the FLSA.").

Courts in other jurisdictions that have considered conditional certification at the same procedural posture have consistently determined that a defendant's default has no impact on the analysis. *See James v. Claiborne*, No. 07-1570, 2009 WL 994951, at *3-4 (W.D. La. Apr. 13, 2009) (granting default judgment in favor of named plaintiffs and conditionally certifying the matter as an FLSA collective action); *Davis v. Precise Commc'n Servs., Inc.*, No. 1:07-CV-3128-JOF, 2009 WL 812276, at *1 (N.D. Ga. Mar. 27, 2009) ("[Defendant's] default does not fundamentally change the analysis the court must undertake in deciding whether to conditionally certify Plaintiffs' class."); *Sniffen v. Spectrum Indus. Servs.*, No. 2:06-CV622, 2007 WL 1341772, at *1 (S.D. Ohio Feb. 13, 2007) (granting default judgment and conditionally certifying collective).

Granting conditional certification despite Defendants' default is not only appropriate, but necessary before Plaintiffs move for a default judgment. Requiring Plaintiffs to first seek a default judgment without first granting conditional certification and allowing other Restaurant Employees to opt into the action would prejudice the proposed FLSA Collective Plaintiffs seek to represent. Specifically, if Plaintiffs obtain a default judgment prior to conditional certification, any Restaurant Employees who opt into the action may be barred from recovering damages under the default judgment. Indeed, courts have "expressed uncertainty as to 'whether the Court could continue to adjudicate the FLSA collective action *after* granting Plaintiff default judgment.'" *Charvac v. M & T Project Managers of N.Y., Inc.*, No. 12-CV-05637 (CBA)(RER), 2013 WL 6711485, at *3 (E.D.N.Y. Dec. 18, 2013) (quoting *Troncone v. Velahos*, No. 10-CV-2961, 2011 WL 3236219, at *8 n.8 (D.N.J. July 28, 2011) ("An entry of default judgment is a form of final relief that may trigger the mootness doctrine and bar Plaintiff from continuing as the class representative in the FLSA collective action."), *reconsidered on other grounds*, 2012 WL 3018061 (D.N.J. July 23, 2012)).

Courts that have considered motions for default judgment in FLSA collective actions without having first granted conditional certification have overwhelmingly held that opt-in plaintiffs may not recover under the default judgment, as those opt-in plaintiffs were not named in the pleading. *See Charvac*, 2013 WL 6711485, at *3 ("Courts have expressed concern about whether opt-in plaintiffs are entitled to default judgment based on a complaint in which they are not named, but wherein the intent to proceed as a collective action is clear."); *Hosking*, 2013 WL 5132983, at *6-7 (finding that plaintiffs are not entitled to collective class action damages as to certain defendants where the court entered default judgment against them prior to granting conditional certification); *Rodriguez*, 784 F. Supp. 2d at 132-33 (on consideration of motions for conditional certification and default judgment, granting default judgment in favor of the named plaintiffs, but finding that "a default judgment [was] not warranted as to any potential opt-in plaintiffs who may subsequently consent to become a party to this action" because defendants must have "an opportunity to respond" to their claims); *James*, 2009 WL 994951, at *5 (refusing to award damages to opt-in plaintiffs under default judgment because they were not "added as party plaintiffs in this matter").[7]

Accordingly, in the event that Defendants fail to cure their default, Plaintiffs respectfully submit that the Court should take the following approach to conditional certification, disseminating notice to the collective, and considering a default judgment:

(i)     Assuming it finds that Plaintiffs have made the requisite "modest factual showing" to warrant conditional certification (*Myers*, 624 F.3d at 555 (internal quotation

---

[7] To be sure, at least one court has allowed plaintiffs in an FLSA collective action to simultaneously obtain conditional certification and default judgment, and then permitted plaintiffs to amend their complaint to add opt-in plaintiffs as named parties. *See Rodriguez*, 784 F.Supp.2d at 132-33 (granting simultaneously motions for conditional certification and default judgment in favor of the named plaintiffs notwithstanding that plaintiffs should be required to amend the complaint at a later date to include any potential opt-in plaintiffs). However, given that the *Rodriguez* decision is an outlier in this regard, Plaintiffs should not be forced to incur the risk on behalf of the collective that the members thereof may be excluded from recovery under a default judgment.

marks omitted)), the Court should grant the instant motion and authorize the dissemination of notice to all other Restaurant Employees;

(ii)     Then, after the opt-in period closes, the Court should grant Plaintiffs leave to amend their Complaint to add all Restaurant Employees who have opted in as named plaintiffs; and

(iii)    Finally, following the expiration of Defendants' deadline to respond to Plaintiffs' amended pleading, the Court should permit Plaintiffs to move for a default judgment on behalf of Plaintiffs and all members of the collective who have opted in and been added to this action as named parties.

Courts that have encountered this same set of circumstances have used the same or similar approach. *See, e.g., Cortes*, 2011 WL 5964598, at *3 n.5 ("After the time for opting in has expired, plaintiff shall amend his complaint to include all individuals who have consented to joining the FLSA action and the amended complaint shall be served upon the defendants."); *see also Troncone*, 2011 WL 3236219, at *8 n.8 (denying motion for default judgment, which excluded opt-in plaintiffs, without prejudice because "the Court presumes that Plaintiff seeks to vindicate the rights of all members of the collective action along with her own individual rights"); *Lopez v. NTI, LLC*, No. DKC 2008-1579, 2008 WL 5120542, at *4 (D. Md. Dec. 4, 2008) (allowing plaintiffs to clarify the employees for whom they seek a default judgment, as "Plaintiffs filed an amended complaint . . . but did not add the 16 newly consenting claimants to the amended complaint" before moving for default).

The court's decision in *Charvac* is particularly instructive, clearly explaining why Plaintiffs' proposal serves the interest of the collective, as well as the risk to the collective if conditional certification is not resolved before seeking a default judgment:

> I respectfully recommend that Your Honor deny Plaintiff's motion for default judgment without prejudice to renewal, and *sua sponte* grant Plaintiff leave to amend the complaint to add the individuals who have consented to join this action. Absent such amendment, I find no legal basis upon which to award damages, attorney's fees, and costs to the opt-in plaintiffs. . . . If M & T fails

> to respond to the amended complaint, after having been properly
> served, then the plaintiffs should be allowed to move for default
> judgment again.

2013 WL 6711485, at *3 (citation omitted) (footnote omitted).

Accordingly, the Court should grant the instant motion and permit the dissemination of notice to the proposed FLSA collective.  Should Defendants fail to cure their default by the close of the opt-in period, Plaintiffs intend to seek leave to amend their pleading to add all opt-in plaintiffs as named plaintiffs, after which they will move for default judgment.

## IV.   EQUITABLE TOLLING SHOULD BE GRANTED TO PROTECT THE RIGHTS OF THE FLSA COLLECTIVE

Plaintiffs respectfully move for equitable tolling of the statute of limitations for the putative FLSA Collective from November 23, 2021, the date Plaintiff filed the instant motion, until the close of any Court-ordered opt-in period.  "In the Second Circuit, . . . 'equitable tolling is commonly granted upon the filing of a motion for conditional certification of a collective action.'" *Varghese v. JP Morgan Chase & Co.*, No. 14 Civ. 1718 (PGG), 2016 WL 4718413, at *11 (S.D.N.Y. Sept. 9, 2016) (quoting *Xiao Ling Chen v. XpresSpa at Term. 4 JFK, LLC*, No. 15 CV 1347 (CBA)(CLP), 2016 WL 11430475, at *10 (E.D.N.Y. Feb. 16, 2016) (collecting cases)). Indeed, "[c]ourts routinely grant equitable tolling in the FLSA collective action context to avoid prejudice to actual or potential opt-in plaintiffs that can arise from the unique procedural posture of collective actions."  *Yahraes v. Rest. Assocs. Events Corp.*, No. 10-CV-935 (SLT), 2011 WL 844963, at *2 (E.D.N.Y. Mar. 8, 2011) (quoting *Antonio-Morales v. Bimbo's Best Produce, Inc.*, No. CIV.A.8:5105, 2009 WL 1591172, at *1 (E.D. La. Apr. 20, 2009) (collecting cases)); *Iriarte v. Café 71, Inc.*, No. 15 Civ. 3217 (CM), 2015 WL 8900875, at *7 (S.D.N.Y. Dec. 10, 2015) ("Due to docket congestion this Court was unable to address Plaintiff's motion for some months after it was made.  The claim should not be prejudiced by this delay.  The statute of limitations will be

tolled as of the date of the filing of Plaintiff's motion for conditional certification.").

"In determining whether equitable tolling is warranted, the Second Circuit has stated that a court 'must consider whether the person seeking application of the equitable tolling doctrine (1) has acted with reasonable diligence during the time period she seeks to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." *Yahraes*, 2011 WL 844963, at *1 (quoting *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80-81 (2d Cir. 2003)).  District Courts in the Second Circuit have held:

> [T]he delay caused by the time required for a court to rule on a motion, such as one for certification of a collective action in a[n] FLSA case, may be deemed an extraordinary circumstance justifying application of the equitable tolling doctrine.  While plaintiffs wishing to pursue their rights cannot sit on them indefinitely, those whose putative class representatives and their counsel are diligently and timely pursuing the claims should also not be penalized due to the courts' heavy dockets and understandable delays in ruling.

*Schaefer v. M & T Bank Corp*, 122 F. Supp. 3d 189, 198 (S.D.N.Y. 2015) (quoting *McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 445 (S.D.N.Y. 2012).  "Typically, equitable tolling results in the look-back period being keyed to the date of the filing of the motion seeking court-authorized notice."  *Schaefer*, 122 F. Supp. 3d at 198.

Here, in the absence of such tolling, FLSA Collective members' claims will continue to expire prior to their receiving notice of this lawsuit and being provided with the opportunity to seek recoverable damages for unpaid wages.  Equitable tolling is appropriate because Plaintiffs have acted with reasonable diligence during the period they seek to toll for the FLSA Collective, despite Defendants' default.  Indeed, after the Court issued a Certificate of Default against Defendants on October 20, 2021, Plaintiffs immediately undertook the drafting of this motion and filed it approximately one month later.  Huot Decl. ¶ 12.  Plaintiffs filed the instant motion prior

to seeking a default judgment against Defendants in order to protect the rights of the FLSA Collective, who may be barred from recovering damages under the default judgment (*see supra* at 16-21), and whose statute of limitations continue to run absent written consent to join the lawsuit. Thus, the Court should equitably toll the statute of limitations for members of the FLSA Collective.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the instant motion for conditional certification and authorize that notice be disseminated to potential members of the FLSA Collective in accordance with 29 U.S.C. § 216(b), together with such further relief as the Court deems just and proper.

Dated: November 23, 2021  
      New York, New York

**FARUQI & FARUQI, LLP**

By: */s/ Innessa M. Huot*  
    Innessa Melamed Huot  
    Alex J. Hartzband  
    Camilo M. Burr

685 Third Avenue, 26th Floor  
New York, New York 10017  
Tel: 212-983-9330  
Fax: 212-983-9331  
ihuot@faruqilaw.com  
ahartzband@faruqilaw.com  
cburr@faruqilaw.com

*Attorneys for Plaintiffs and*  
*the Proposed FLSA Collective*